DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

May, 1882.

---

## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN H. LIVINGSTON, APPELLANT.

*Nuisance — when one cannot be convicted for continuing it, if he be not the owner of the land upon which it stands — Public highway — evidence as to the dedication of land for the purposes of.*

A man cannot be convicted of erecting *and continuing* a nuisance, an obstruction of a highway, when it appears that the land upon which the obstruction stands belongs to his wife and that he erected the same as her agent.

The question as to what evidence of the user of land by the public is insufficient to establish the dedication of the land for a public highway, considered by LANDON, J.

APPEAL from a judgment of the Court of Sessions of Albany county, convicting the defendant of erecting and continuing an obstruction in a public highway.

*Edward J. Meegan*, for the appellant.

*D. Cady Herrick*, district-attorney, for the people.

LEARNED, P. J.:

The defendant's wife, without dispute, is the owner of the land in question; and he, acting for her, erected the alleged obstructions. He was indicted, not only for erecting, but for continuing these obstructions to an alleged highway. And the jury have found him

guilty as charged in the indictment. On such a verdict, the judgment is that defendant at his own costs abate the nuisance within a certain time, and in default thereof that process issue to the sheriff commanding him to abate the nuisance at the defendant's costs. (*Munson* v. *People*, 5 Parker Crim. Cas., 16 ; Wharton's Crim. Law, §§ 2368, 2369.) Because the verdict of the jury has found the defendant guilty of continuing the nuisance, therefore the court, on this verdict, may adjudge that the defendant abate a nuisance on property which, it is admitted, does not belong to him. And if he fails to do this, then the court may direct the sheriff to abate a nuisance on property of a person, viz. Mrs. Livingston, who has never been heard as to her right to maintain the structure and who is not a party.

I do not mean that a person who erects a nuisance cannot be convicted of that act and fined. Possibly, (although I express no opinion on this,) the jury in this case might have rendered a verdict of guilty of erecting, but not of continuing. But the fact is that the jury have convicted the defendant of continuing, as well as of erecting the nuisance. While, as it is shown that the defendant is not the owner, he cannot, in my opinion, be convicted, at least on this proof, of continuing. If Mrs. Livingston were the successor to the defendant she would be liable for the continuance of the alleged nuisance. (*Brown* v. *Cayuga and Susque. R. R. Co.*, 12 N. Y., 486.) This defendant would not be liable, unless he derived some benefit as by demising the premises and receiving rent or by conveying with covenants, for the continuance of the nuisance. (*Mayor* v. *Cunliff*, 2 N. Y., 174; *Hanse* v. *Corning*, 1 Lans., 288.) Much less would the defendant be liable for the continuance if Mrs. Livingston was not his successor ; and if he had erected the nuisance, only as her agent.

It may be said that it is not necessary that the court should adjudge that the defendant abate the nuisance, and that the court may merely impose a fine. But I do not think that a verdict can stand, which finds the defendant guilty of continuing a nuisance which he does not continue and which exposes him to a judgment which he cannot perform.

There are perhaps other reasons why this conviction should be reversed, but I deem this sufficient.

It should be said in justice to the learned judge who tried the case that his attention was not in any way called to the point above suggested, and that he could not be expected to notice it, as he very probably did not see the indictment.

Conviction reversed and new trial granted.

LANDON, J. :

I advise the reversal of this conviction, upon the ground that the evidence entirely fails to show that the *locus in quo* was a public highway, and it was therefore the duty of the court to direct an acquittal. (*People* v. *Bennett*, 49 N. Y., 137.)

Fifty years ago the owner of the lot told some of his neighbors that if they would help him build a stone wall from the main road to the lake, they could drive their sheep to the lake and wash them there. They helped him build the wall, and since then these persons and their successors, as they had occasion, drove their sheep across this lot, which adjoined the Knox road on one side and the lake on the other, to an inclosure upon the lake shore, and there washed them. As this lot was unfenced along the Knox road, the public in passing to and from the lake crossed it where it was most convenient. Picnic parties, fishermen and others crossed over it to and from the lake. In the winter ice was drawn from the lake across it, and sometimes when the lake was frozen teams were driven across it to and from the lake. There is no regular traveled road across the lot, and the evidence is, that when people crossed it they crossed it in different places. The sheep, it is true, made a beaten path from the Knox road to the sheep pen, but there does not appear to have been any other well defined path. All over the lot were wagon and cattle tracks, and the evidence fails to show that the travel, except by the sheep, was in an uniform route, and except that at the shore of the lake the tracks were more united. After suffering this miscellaneous trespassing for so many years, doubtless from motives of kindness and good nature, and because the land was not regarded as valuable, the owner has thought proper to inclose it and erect some buildings upon it; thereupon her husband, who has acted as her agent in the matter, has been convicted of wickedly creating and maintaining a nuisance in a public highway. The sheep path, upon which the buildings in part

stand, is charged to be the public highway, and the east fence or side of the sheep pen is charged in the indictment to be one of the *termini* of this highway.

The license given by the owner of the land to those who helped him build his stone wall, to drive their sheep across his lot, conferred no rights upon the public. The public did not build the wall; the license was to the wall builders, and it does not appear that it was ever extended to any except those claiming under that license. This was a particular use permitted to a certain class of persons in consideration of service rendered, and in no way inured to the benefit of the general public. Leaving the sheep path out of the case and no road across the lot ever existed, unless the whole lot should be condemned for that purpose. The indictment describes a road forty-nine feet wide along the stone wall and covering the sheep path. It is probable from the evidence that that particular part of the lot was used less than any other.

If all the travel across the lot for the last twenty years had been confined to one route, it is not improbable that a highway by user would have been located and established, but the burden was upon the people to prove a highway over the route they described, and this they utterly failed to do.

The conviction should be reversed.

BOARDMAN, J. :

I concur in the opinion of LEARNED, J., but dissent from a new trial on the facts.

Judgment and conviction reversed and new trial granted, on opinion of LEARNED, P. J.